## GATES, RESPONDENT, *v.* POWELL, APPELLANT.

(No. 5,980.)

(Submitted November 13, 1926.  Decided December 9, 1926.)

[252 Pac. 377.]

*Claim ·and Delivery—Bailment—Husband and Wife—Statute of Limitations.*

Claim and Delivery—Bailment—Statute of Limitations.
> 1.  Under section 9058, Revised Codes of 1921, the limitation of two years against an action to recover personal property (sec. 9033) by a bailor against his bailee does not commence to run until the latter refuses to return it on demand.

Same—Bailment—Husband and Wife—Statute of Limitations.
> 2.  An action in claim and delivery by a divorced woman (bailor) against her former husband (bailee) to recover possession of personal property left by her in defendant's home when she separated from him, instituted two years and six months after leaving him but within two years after his refusal to deliver it to her, was not barred under the above rule.  (MR. JUSTICE MATTHEWS, dissenting.)

Husband and Wife—Law Favors Continuation of Marriage Relation.
> 3.  The law favors continuation of the marriage relation rather than its dissolution.

Same—Duty of Wife.
> 4.  The common-law rule that the wife owes the duty to the husband to attend to all ordinary household duties and labor in the advancement of the husband's interests without compensation was not changed, but is recognized, by section 5797, Revised Codes of 1921, in providing that all work and labor performed by a married woman for a person *other than her husband* and children is presumed to be performed for her own account.

Same—Property of Wife—Presumptions—Erroneous Instruction.
> 5.  An instruction in an action in claim and delivery by a divorced woman against her former husband that property bought in the name of the wife with her own or her husband's money is presumed to be the property of the wife was erroneous.

---

[1, 2] Actions, 1 C. J., sec. 384, p. 1146, n. 99; sec. 403, p. 1155, n. 47.  Bailments, 6 C. J., sec. 18, p. 1101, n. 31; sec. 19, p. 1102, n. 36; sec. 30, p. 1105, n. 73; sec. 35, p. 1107, n. 93, 94; sec. 123, p. 1153, n. 97; sec. 128, p. 1154, n. 6.  Limitation of Actions, 37 C. J., sec. 66, p. 746, n. 72, 75 New; sec. 152, p. 807, n. 98; sec. 330, p. 957, n. 75; sec. 331, p. 958, n. 78, 79.  Marriage, 38 C. J., sec. 102, p. 1328, n. 84.
[3, 4]  Husband and Wife, 30 C. J., sec. 36, p. 521, n. 33, 40; sec. 477, p. 825, n. 90; p. 826 n. 95; sec. 829, p. 1056, n. 32.

1.  See 17 R. C. L. 800.
3.  See 13 R. C. L. 1090.
4.  See 13 R. C. L. 845.

*Appeal from District Court, Madison County; Henry G. Rodgers, Judge.*

Action in claim and delivery by Nettie Powell Gates against Jonathan W. Powell. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial.

*Mr. Ike E. O. Pace* and *Mr. M. M. Duncan,* for Appellant, submitted a brief and argued the cause orally.

*Mr. John K. Claxton, Mr. Francis P. Kelly* and *Mr. Philip O'Donnell,* for Respondent, submitted a brief; *Mr. Claxton* and *Mr. O'Donnell* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in claim and delivery instituted by the plaintiff to recover from the defendant certain furniture and household effects, or their reasonable value, with damages for their unlawful detention. Upon issue being joined, the cause was tried to a jury, and resulted in a verdict in the plaintiff's favor. Judgment was entered upon the verdict adjudging the plaintiff entitled to the possession of the property therein specifically described, and to $600 as damages for its unlawful detention; or, in case a delivery of such personal property cannot be had, then that the plaintiff shall be entitled to recover from the defendant the sum in dollars and cents set opposite each item of property as listed and the values thereof found by the jury in addition to damages for their unlawful detention, together with the plaintiff's costs. A motion for a new trial was made, and thereupon, with the plaintiff's consent, the judgment was modified in some unimportant particulars as to the value of certain items of personal property, and a new trial denied. The appeal is from the judgment.

Many alleged errors are assigned by the defendant as reason for reversal of the judgment. However, only two questions

need be considered in disposition of the appeal. They will be discussed in their logical order.

1. Did the court err in denying the defendant's motion for a nonsuit? The motion so made and denied by the court was predicated entirely upon the ground that from the plaintiff's proof it is established "that the plaintiff's alleged cause of action was, at the date when the same was instituted, barred by the statute of limitations; and particularly subdivision 3 of section 9033, Revised Codes of Montana 1921, which statute has been specially pleaded by the defendant in his answer to the second amended complaint, as a special defense." In the defendant's answer the plea of the bar of the statute of limitations is affirmatively made, as stated in the motion.

From the evidence introduced in support of the plaintiff's case in chief, it appears that plaintiff and defendant intermarried on December 5, 1906, and thereafter lived together continuously as husband and wife on a ranch near Cardwell in Madison county until October 20, 1920. On the date last mentioned the plaintiff abandoned the ranch and her husband. She left in the afternoon, while the husband was at work in the field, without his knowledge or consent, and with the intention of never returning. She never communicated to the defendant her intention of leaving. She went to the city of Butte, and as to the effects which she took away with her she testified: "I got my clothes—I had only my own personal things." On her arrival in Butte she immediately instituted an action for a divorce, which was later granted, and thereafter, in October, 1925, she was married to Eldon Gates. At the time of the trial, and for nearly two years before, she resided at Cataragus, New York, with her present husband, Eldon Gates. The property in dispute was acquired during the time the plaintiff and defendant were living together as man and wife, and was left at the defendant's ranch in his possession at the time of her summary departure. She just moved out, and said nothing to Mr. Powell about leaving, or

about the household furniture or anything else. Once after she had so left the defendant, in August, 1922, she called upon him at his ranch. She was accompanied by her present husband, but was not at the time married to the latter. She went into the house, looked around, and then spoke to Mr. Powell about the furniture, claiming the same as her own. She then saw all of the furniture in the house and told him she wanted it, and asked if he would let her have it "without any trouble." Without reference to how any of the property was acquired, she "just made a blanket demand for all of it." He refused to surrender the property, stating "she had got every damn thing she would ever get." Later, on April 20, 1923, this action was instituted by her. It appears that from the time the plaintiff left the defendant's home she knew the property involved was in his possession and being used by him, but she made no claim thereto prior to her visit in August, 1922, explaining in her testimony, "I supposed at the time I left—I supposed my attorneys put in for my furniture at the time of the divorce case."

Is the action barred by the statute of limitations? So far [1, 2] as pertinent here the statute (Rev. Codes 1921) provides: Sec. 9027. "The periods prescribed for the commencement of actions, other than for the recovery of real property, are as follows: * * * Sec. 9033. Within two years: * * * (3) An action for taking, detaining, or injuring any goods or chattels including actions for the specific recovery of personal property."

Whether the plaintiff's right of action was barred is dependent upon the time when it actually accrued. And for present purposes the property involved may be treated as rightfully belonging to the plaintiff. The general rule is that the statute of limitations begins to run so soon as a right of action has accrued. (*Viers* v. *Webb*, 76 Mont. 38, 245 Pac. 257.) There is, however, a clear and wide distinction between the creation of a liability and the accruing of a cause of action

thereon.  A cause of action accrues the moment the right to commence the action comes into existence; and, conversely, the right to commence an action arises the moment the cause of action accrues (17 R. C. L. 749), and a civil action is commenced by the filing of a complaint (sec. 9105, Rev. Codes 1921).

The defendant's possession of the property must be regarded as that of a bailee, and therefore a demand was necessary to be made before a right of action for its recovery accrued.  "An essential feature of a bailment is the general agreement to return the subject matter of the bailment, either on demand or at the agreed time, or, if not returned, to account for the property to him from whom the bailee has received it.  It implies a trust that, as soon as the purpose of the bailment is answered, the bailed property shall be restored to the bailor and in the absence of an express agreement by the bailee to return the bailed property to the bailor, the law implies such an agreement.  If a time for the return of the property is not fixed by agreement, or by the nature of the object to be accomplished, the bailee must, after a reasonable time, redeliver it whenever he is called upon to do so."   (3 R. C. L. 114.)  "A person may become a bailee without his voluntary act, as where the possession of the property comes to him unsought or unconsented to, as for example, property coming into his possession or control by finding, by its being left upon his premises, or received from one unlawfully depriving the owner of it.  It would be difficult to mention all who may assume this relation as parties.  Innumerable examples might be given; as a general rule, whenever the personal property comes into the possession of another by reason of any right or privilege short of a gift or sale, actual or conditioned, the relation of bailor and bailee is created."  (Van Zile on Bailments and Carriers, 2d ed., sec. 11.)  "If one, without the trespass which characterizes ordinary larceny, comes into possession of any personalty of another and is in duty bound to exercise some

degree of care to preserve and restore the things to such other, or to some person for that other, or otherwise to account for the property as that of such other, according to circumstances, he is a bailee. It is the element of lawful possession, however created, and the duty to account for the thing as the property of another that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense or not. Thus, while the finder of the property of a person unknown is not bound to interfere with it, if he takes it into his possession he becomes at once bound, without any actual contract, and perhaps without any actual intention to bind himself to the owner of the property, for its safekeeping and return.'' (3 R. C. L., p. 83.)

And by section 9058, Revised Codes of 1921, it is provided, so far as applicable here: ''Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time, within which the action must be commenced, must be computed from the time when the right to make the demand is complete, except in one of the following cases: 1. Where the right grows out of the receipt or detention of money or property, by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends. * * * ''

In discussing the application and effect of this statute to bailments, Mr. Justice Smith, speaking for this court in the case of *Woods* v. *Latta,* 35 Mont. 9, 88 Pac. 402, said: ''Professor Lawson, in his work on Bailments (page 62), says: 'The statute of limitations does not run against the bailor's right to recover the bailed chattel, so long as the bailment lasts, and it has not been put an end to by the bailee refusing to return the property on demand, or otherwise denying the trust and claiming the chattel as his own. This is the rule as to trustees generally, and it applies, also, to bailees.' (See, also, Edwards on Bailments, sec. 175.)'' It is then stated in

the opinion that these principles of law have been incorporated into the statute last above mentioned.

It must be admitted that the statute is not free from ambiguity, and that its language is not easy of application. The legislative intent of this statute is not clear. However, it was evidently intended to cover personal property held in bailment, and, as the construction given to it by this court in the *Latta Case* appears reasonable, and in accord with recognized legal principles, we accept it as authority; so that where, as in this case, the defendant lawfully came into possession of the property, a demand is necessary to terminate the relation by reason of which it is held, and a condition precedent to the right to maintain an action for its recovery. The defendant's position with respect to the property was that of a gratuitous bailee (sec. 7656, Rev. Codes 1921), and therefore a demand made upon him for the return of the property, and a refusal by him, were prerequisites to the accrual of the plaintiff's right of action. (*Viers* v. *Webb, supra.*) The statute does not run against the bailor's right to bring action to recover personal property so long as the bailment lasts. However, right of action for its recovery will at once accrue in the bailor, when, as here. the bailee refuses to return it on demand, or claims it as his own.

Although it appears that the plaintiff instituted an action for a divorce on the day she left her husband, the record is silent as to when or under what circumstances the divorce was .granted, and also as to any property settlement or provision made for the care and custody of the three minor children. So that the fiduciary relationship of husband and wife existed until the decree of divorce was in fact entered; and until then the wife had a right to return to the home and resume the possession, control and enjoyment of her own personal effects. [3] The law favors a continuation of such family relation rather than its dissolution. So that until the decree of divorce was in fact entered it could not be said on any theory that she

abandoned her right to return and assert claim to her own
personal property. It reposed in her husband's custody as
bailee; the presumption being that, if the property was in fact
hers, he would surrender it to her on demand. Useless litiga-
tion is to be discouraged, and, in applying the language em-
ployed in this statute to the facts, it must be interpreted to
mean that the plaintiff's right to recover the property by an
action at law accrued the moment she learned that her husband
asserted claim thereto adversely—not before.

The possession of the defendant was rightful in the first in-
stance. Therefore there was not any infringement of the
bailor's rights; and a right of action in her favor did not arise
until the defendant, as bailee of the property, refused to per-
form the implied terms of the contract of bailment or repudi-
ated the bailment. (*Viers* v. *Webb, supra*; *Rathgeb's Estate,*
125 Cal. 302, 57 Pac. 1010; *Lucas* v. *Daniels*, 34 Ala. 188; 8
C. J. 1107.) It must therefore be apparent that the action
when commenced was not barred by the statute of limitations.
She made demand for the return of the property in August,
1922, which was refused by the defendant, and this action was
instituted for its recovery on April 20, 1923, eight months
before the lapse of the time required to constitute a bar of the
action.

2. Was error committed in instructing the jury as to the
[4, 5] law? The plaintiff in her testimony admits that cer-
tain of the articles of personal property described in her com-
plaint, including the piano, library table, Axminster rug,
vacuum cleaner and other effects listed, were purchased from
money derived from the sale of cream, butter and eggs pro-
duced on the farm as a result of the joint efforts of the parties.
There is conflict in the evidence respecting how other articles
claimed by the plaintiff were obtained.

Of its own motion the court gave to the jury instruction No.
10 as follows: "You are instructed that property bought in
the name of the wife with her own or her husband's money

[77 Mont. 554.]

during marriage is presumed to be the property of the wife, but that this presumption is a disputable one.''

The statute provides: ''All work and labor performed by a married woman for a person other than her husband and children shall, unless there is a written agreement on her part to the contrary, be presumed to be performed on her separate account.'' (Sec. 5797, Rev. Codes 1921.) Services for her husband and children are expressly excepted from the operation of the statute. The property rights of the husband and wife are governed by the statute, in the absence of a marriage settlement agreement to the contrary. (*Id.,* sec. 5803.) At common law the husband, as a result of the marriage, was entitled to the services and earnings of his wife; and even under statutes such as ours, enlarging the rights of married women, it is the duty of the wife, without compensation, to attend to all the ordinary household duties and labor faithfully in the advancement of her husband's interests. Thus the statute providing that the wife shall be entitled to her earnings for labor performed ''for a person other than her husband'' does not change the rule respecting the services which she owes her husband as head of the family. (*Id.,* sec. 5783; 13 R. C. L., p. 1090.)

Professor Schouler, in his treatise on Domestic Relations, states: ''By recent statutes, enacted in many of the United States, married women are allowed the benefits of their own labor and services when performed, or even contracted to be performed, on their sole and separate account, free from all control or interference of a husband. * * * The wife must show that she rendered the service on her own account, and not conjointly with the husband or for his benefit; and his waiver of his own claims should also appear on her behalf. And where the proceeds of her earnings have been so mixed up with her husband's property as not to be easily distinguishable, the disposition is to regard the whole as belonging to the husband.'' Here, however, the wife asserts that the money so

obtained with which the purchases were made by her was given to her by her husband. As to the facts, the evidence is in conflict. There can be no question but what a husband may make a gift to his wife the same as to another person. However, viewed from the theory that the money with which the articles were purchased was given to the plaintiff by her husband, objection to the instruction is not removed. As there is no justification for declaring that there is a presumption that property, purchased by the wife during the existence of the marital relation with her husband's money, is the wife's separate property, the instruction is manifestly erroneous.

The doctrine hereby announced is not a new one. By statute we have gotten away from the old rule of English jurisprudence whereby a woman's identity and rights were, in consequence of marriage, merged in the husband as lord and master. To-day in Montana a wife is given more rights and protection than is her husband.

As the court's instruction respecting the law governing the property rights of the parties was calculated to mislead the jury in arriving at a verdict, the judgment is reversed and the cause remanded to the district court of Madison county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICE STARK and HONORABLE A. J. HORSKY, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, concur.

MR. JUSTICE MATTHEWS, Dissenting: I cannot agree with what is said by my learned associate with respect to the statute of limitations. The general rule announced is correctly stated, but in my opinion we are not dealing with a case which comes within the *general rule,* but with a case with regard to which the legislature has provided a special rule for our guidance, by the enactment of section 9058, quoted in the opinion. As, under that section, "when a demand is necessary," the

period of the statute must be computed from the time "when the right to make the demand is complete," a discussion of when plaintiff's *right of action* accrued is foreign to the question to be determined.

The general rule announced is in effect: "Except where, as is the case in several of the states, provision is made in the statute that when a demand is necessary before an action can be brought it shall be deemed to have been made at the time when the right to make the demand accrued * * * such a provision exists in the statutes of Tennessee (section 2780); New York (section 410); and Alabama (section 3241)." (1 Wood on Limitations, 2d ed., sec. 118.)

Our section was adopted *verbatim* from New York, and long before its adoption the supreme court of that state held: "The clear construction of that provision of the Code is that, in the absence of any agreement or understanding" with respect to the time of "repayment of moneys deposited, or a return of property delivered, the lapse of * * * [the statutory period applicable after the deposit or delivery] operates to defeat any claim." (*Adams* v. *Olin,* 140 N. Y. 150, 35 N. E. 448.)

Conceding that something in the nature of a bailment was created, the creation of such a trust could not take the case out of the operation of the statute, as "to hold otherwise would put it in the power of the party to destroy the beneficial effect of the statute." (*Newsom* v. *County of Bartholomew,* 103 Ind. 526, 3 N. E. 163.)

Under the plain mandate of the statute, although the plaintiff was entitled to the property, if it was hers, as the defendant came rightfully into its possession, a demand was necessary before action could be commenced, but the statute began to run from the time "when her right to make the demand was complete," and not from the time when her right of action accrued by the making of the demand. (*Brown* v. *Bronson,* 93 App. Div. 312, 87 N. Y. Supp. 872; *Duer* v. *Twelfth St.*

[77 Mont. 554.]

*Church* (City Ct. Brook.), 10 N. Y. Supp. 526; *Wheeler* **v.** *Breslin,* 47. Misc. Rep. 507, 95 N. Y. Supp. 966.)

There was no agreement or understanding between the parties. Plaintiff left the house without consulting defendant, She did not rely upon the fiduciary relation existing between them, for she then intended to, and did immediately, commence divorce proceedings, but, if by reason of the fiduciary relation existing, the case comes within the first exception to the rule announced in section 9058, still the accrual of her right of action is immaterial, as the statute runs from the time when she has actual knowledge of the facts upon which her right to make the demand depends, and she had such knowledge from the time she left the house and commenced her divorce proceeding.

She made her demand within time, but, as she waited thereafter until more than two years had elapsed from the time she left the property with her husband, in my opinion her action was barred, as, under section 9058, she must both make her demand and commence her action within the statutory period.

We may not agree with the policy of this statute, the like of which exists in so few states in the Union, but it is not the province of the court to repeal laws or to "pervert the purpose of a statute to prevent an unjust result." (*In re Elm Street, etc.,* 208 App. Div. 844, 204 N. Y. Supp. 906.) Our authority extends only to the interpretation and construction of the enactments of our co-ordinate legislative branch of the state government, regardless of the effect of a decision on the individual or as a precedent.

Holding these views, it is my opinion that the cause should be remanded, with direction to dismiss the action.

Rehearing denied December 29, 1926.